**DIECKBRADER, Plaintiff, v. NEW YORK CENTRAL RAILROAD, Defendant.**

Common Pleas Court, Hamilton County.

No. A-129188. Decided March 20, 1953.

Jerome Goldman, Cincinnati, for plaintiff.
Harmon, Colston, Goldsmith & Hoadly, Cincinnati, for defendant.

## OPINION
By WOESTE J.:
This cause is before the Court at this time upon a demurrer to interrogatories filed with the petition under authority of §11348 GC. Because the contents of the petition is adverted to in the briefs and the arguments of counsel, especially those of the defendant, it is well that the petition in its entirety be quoted. The interrogatories, fifteen in number, are also quoted.

## PETITION
"Plaintiff says that the defendant is a corporation under the laws of the State of New York, and of Ohio, and perhaps other states, doing business in Hamilton County, Ohio, and having tracks, agents and employes in Hamilton County, Ohio, and was such at all times hereinafter mentioned.

"Plaintiff says that he is in the business of carrying freight as a contract carrier by motor vehicles.

"Plaintiff says that on or about the 23rd day of September, 1949, at or about 4:00 o'clock A. M., an International tractor pulling a Fruehof trailer, both belonging to plaintiff, carrying freight under a contract of carriage, was being driven in a northerly direction on U. S. Route 41 near the northerly outskirts of the town of Schneider, in Lake County, State of Indiana. Plaintiff says that at said time and place, said vehicles of plaintiff were proceeding across railroad tracks which cross said Route 41 at grade, which railroad tracks were being used and operated by the defendant. Plaintiff says that as his said tractor and trailer were proceeding across said railroad tracks on Route 41, at said time and place, the

defendant, by operating one of its trains in a careless and negligent manner, as more particularly set forth hereinafter, caused said train of railroad cars operated by the defendant to collide with the tractor and trailer of plaintiff, causing the said tractor and trailer to upset and crushing the same, proximately and directly injuring and damaging the plaintiff as hereinafter set forth.

"Plaintiff says that the defendant was negligent in the operation of its said railroad train, directly and proximately causing the same to collide with said tractor and trailer of the plaintiff at said time and place, in the following particulars, to-wit:

"Defendant failed to signal a whistle as required by the Laws of Indiana, and further said defendant failed to ring any bell, as required by the Laws of Indiana.

"Defendant failed to give any warning whatever of the approach of its said train to such crossing.

"Plaintiff says that said defendant failed to have any light on such train which could be seen from such crossing or in any way to indicate the approach of defendant's said train.

"Plaintiff says that defendant was operating its said train which collided with the plaintiff's tractor and trailer aforesaid, as part of a switching operation of defendant, in which defendant was backing said train of cars beginning some distance to the west of said crossing; and that as said train approached said crossing, the said cars were disconnected from the engine pushing the same, and were caused by defendant to continue backing toward said crossing on their own momentum, detached from said engine.

"Plaintiff says that the defendant failed to maintain on said train an adequate switching crew as required by the aforesaid Indiana law.

"Defendant failed to keep a proper lookout as its said train approached said crossing so as to enable the operators of said train to observe persons and vehicles such as plaintiff's approaching said crossing on said Route 41.

"The laws of the State of Indiana required that the defendant install and maintain automatic warning devices or signals at said above mentioned crossing.

"Plaintiff says that there was erected at said crossing what was purported to be an automatic signal light, which was, when maintained properly, supposed to flash or show red upon the approach of any train or cars to said crossing on the aforesaid track. Plaintiff says that although the said purportedly automatic signal light was located at said cross-

ing on the approach thereto from the southerly side of said crossing at the time plaintiff's said tractor and trailer approached said crossing from the southerly side, the said purportedly automatic signal light was, and was observed by plaintiff's driver to be, dark and did not show or flash red or in any other way indicate the approach of the said train of cars which collided with plaintiff's tractor and trailer as aforesaid. Plaintiff says that the failure of said purportedly automatic signal light to show or flash red or otherwise indicate the approach of said railroad train of cars, was due to the defendant's negligenct failure to maintain and operate the same properly.

"Plaintiff says that defendant, in the operation of its said train at said time and place, violated the rules and regulations of the Public Service Commission of the State of Indiana which were then and there in effect, providing for the lighting at said crossing and the safe operation of railroads.

"Plaintiff says that as the direct and proximate result of the defendant's negligence as above set forth, said tractor and trailer of plaintiff were overturned and crushed, and plaintiff was damaged in the following particulars:

"Said tractor had a reasonable and fair market value of $3467.50 immediately prior to said accident, and said trailer had a reasonable and fair market value of $3,708.12 immediately prior to said collision, and the value of said tractor and trailer immediately after said collision was only $850.00, the salvage value of the same, to plaintiff's damage in the sum of $6325.62.

"Plaintiff says that as the direct and proximate result of defendant's negligence aforesaid, plaintiff was also damaged as follows: The reasonable value of damage to cargo being carried by plaintiff at said time, and for transferring said' cargo to other vehicles so as to complete plaintiff's contract of carriage, $187.74; the reasonable and fair cost to plaintiff of supervising the disposition of the said damaged vehicles and transfer of cargo, $350.00; the reasonable value of wrecker service to haul said damaged equipment away, $150.00.

"Plaintiff says that he suffered further damage as the proximate and direct result of defendant's aforesaid negligence, in that he lost the use of said tractor and trailer and was unable to replace said trailer for 20 days, and unable to replace said tractor for 68 days. Plaintiff says that the reasonable value of the use of said trailer was $20.00 per day, and the reasonable value of the use of said tractor was $35.00 per day; and that by reason of such loss of use, plaintiff was damaged in the sum of $2,780.00; all as the direct and proximate result of defendant's negligence as aforesaid.

"Plaintiff says that he has made demand upon the defendant to pay said damages, but that the defendant has failed, neglected and refused to do so, all to plaintiff's damage in the sum of $9,793.36.

"Plaintiff attaches hereto certain interrogatories and requests that an officer of defendant corporation be required to answer same plainly and fully under oath.

"WHEREFORE, plaintiff prays judgment against the defendant in the sum of $9,793.36 and for his costs herein expended."

## INTERROGATORIES

"1. State the name and present address, and job title, of all members of the crew assigned to the train, a portion of which was involved in the accident alleged in the petition in this case.

"2. State whether the moving train of cars, which collided with plaintiff's vehicle, was attached to an engine at the time of the collision.

"3. State by name and job title, each member of the crew who was actually on the moving train of cars, and on the engine, if one was attached to said moving train of cars, which collided with plaintiff's vehicle, in the accident alleged in plaintiff's petition.

"4. State where each member of the crew, by name and job title, on said moving train of cars, and on said engine (if one was attached to said moving train of cars), was on said train of cars and on said engine at the time of said collision or within one minute prior thereto.

"5. State what each member of said crew (by name and job title) mentioned in Answer to Interrogatory No. 4 was doing immediately prior to said collision.

"6. State what the train of cars which collided with plaintiff's vehicle, was doing at the time of the collision, and what the object of the crew was in moving said train of cars in the way in which it was moving at the time of said collision.

"7. State whether or not the defendant has used the crossing at which the collision alleged in plaintiff's petition occurred, for the purpose it was used the night of said collision by the defendant, since the time of said collision.

"8. State the date of all accidents which occurred at the crossing at which the collision alleged in the plaintiff's petition occurred, during the twelve months preceding September 23, 1949.

"9. State the name and address of all persons whose person or property was injured during said twelve months preceding September 23, 1949, in accidents at said crossing and state the date of such injury.

"10. State whether any automatic warning device was installed at the crossing at which the collision alleged in plaintiff's petition occurred.

"11. If such automatic warning device was so installed, state the name of the manufacturer, date of purchase and installation, the type, manufacturer's serial number, and other description as to identify the same positively.

"12. If such automatic warning device was so installed, state the last date prior to the accident and suit that the same was inspected or serviced, and attach copy of the inspection and service report for that occasion.

"13. Was the accident alleged in plaintiff's petition reported to the Public Service Commission of Indiana by defendant?

"14. If such report was made, attach copy of such accident report.

"15. Was report of accident alleged in plaintiff's petition made to the Interstate Commerce Commission? If so, attach copy of such accident report to Interstate Commerce Commission."

Earlier cases on the scope and purpose of interrogatories are distinctly at variance, whether they were considered under the bill of discovery method, the equitable proceeding in vogue prior to A. D. 1857 when the interrogatory statute (§11348 GC) was embodied in the judicial code, or whether they were considered since the adoption of that section and kindred sections applying variously to depositions, admission and inspection of documents, or discovery.

It is urged by the defendant that because operative facts are alleged in the petition sufficient to sustain an action sounding in negligence, the pleader does not require the information sought to be adduced by the interrogatories in order to perfect his pleading.

Generally speaking, the object of filing interrogatories under the code section is the same as that of a bill of discovery whether such bill was by separate suit under the equity powers of the Court or under the later code section authorizing that same procedure. That purpose was to permit the interrogator to compel the opposite party to furnish him with information that if pertinent to the issues in the pleadings might be used as evidence in the trial of the case. Wild v. Cadwalader, 18 O. D., 565.

Sec. 11348 GC authorizing interrogatories to be attached to pleadings should be liberally construed. **Sloan v. S. S. Kresge Company, 43 O. O., 407.**

In the presentation of the arguments on this demurrer, and the briefs filed in support of the demurrer and in opposition

thereto, counsel repeatedly pointed out the historical account of the facts which led up to the filing of this action. This information was indulged by the Court because of its possible value in disclosing the pertinency of the interrogatories. This history would indicate that the plaintiff is a contract freight hauler and is the owner of a tractor and trailer which was destroyed when a train of cars operated by the defendant backed into the plaintiff's equipment at a railroad crossing in the town of Schneider, Indiana. Plaintiff's driver was pinned under the wreckage of the truck, which truck was found underneath one of defendant's freight cars, for a period of over four hours after the motion of the truck had been arrested. It was stated that it required four hours to extricate the driver from the wreckage. The plaintiff owner of the tractor trailer did not arrive at the scene of the accident until some eight hours after it occurred. It was stated in argument that it was dark, being approximately one o'clock in the morning, when the collision took place and that the defendant gave no warning of the approach of its train of cars being backed across the crossing; that the defendant failed to blow a whistle or ring a bell or have a light at the rear of the train, as required by the statutes of Indiana; that it failed to have a sufficient number of crew members; that the crew was not stationed in such a way as to give any warning of the approach of the train; also that there was an electric flasher signal at the crossing, which was not flashing at the time of the accident. It was stated that defendant would contend that the flasher signal was still flashing after it had been uprooted from the ground and after the vehicles involved had reached a stationary position. It was indicated too that the railroad cars in the accident were not attached to an engine at the time of the collision but had been propelled across the crossing as a result of the momentum given by the locomotive before it was detached. Counsel for the plaintiff indicated that by hearsay, some members of the original train crew were not on the train of cars involved in the accident, thus reducing the number of crew members below that required by law. These significant disclosures assist the Court in applying a constructive legal yardstick to measure the reasonableness and legality of the respective interrogatories. **Sec. 11348, et seq., GC,** providing for interrogatories, and **§§11521, 11522, 11525, 11526, 11550, 11551, 11552, 11553, 11554 and 11555 GC** inclusive providing for depositions, production of documents and discovery were intended to obviate the necessity of filing the old Chancery Bill of Discovery, and to permit either side in a law suit to become fully acquainted with

the facts pertinent to the issues, in possession of other parties to the suit, prior to the trial of the case, and thus aid the litigants to more completely prepare their case and thereby accomplish the maximum presentation of the issues at the trial, and thus also accomplish substantial justice.

The mere fact that the pleader alleges facts which "he verily believes" and that these facts state a good cause of action does not exclude a complete and searching investigation, by way of interrogatories, to ascertain all relevant, material and competent evidence necessary to the proof of pertinent matter incident to a thoroughgoing judicial inquiry.

The word "pertinent" means, belonging or related to the subject of the matter in hand; applicable or relevant. Sloan v. Kresge Co., supra. In the light of the historical matter revealed heretofore one can readily appreciate the handicaps under which the plaintiff may suffer as he approaches the trial of the case. Although it is rather uncommon to resort to interrogatories in a negligence case, the situation prevailing here seems to be a typical one for that procedure. What then should be the rule applicable to the interrogatories presented here?

There have been two cases in courts of last resort, which circumscribe the law on the scope of interrogatories. The first and perhaps the latest expression by the Supreme Court of Ohio is that of **In re Keough, 151 Oh St, 307.** While the immediate question in that case involved the scope of investigation permitted in taking depositions, yet by analogy the same principles are involved which should attend the taking of interrogatories. Syllabus 1 in the Keough case and **Syllabus 2 In re Hyde, 149 Oh St 407,** which latter case was approved and followed in the Keough case, in a substantial manner, circumscribed the law as it may apply to the current demurrer.

Syllabus 1 in the Keough case reads as follows:

"A record as to the barn in which a public transportation vehicle, involved in an accident, was kept on the day of such accident, the trip sheets showing the operation of the vehicle on such day, and a record of the names of the operators of the vehicle on that day are competent as evidence in an action predicated on such accident claimed to have been caused by the negligence of the operator of such vehicle, and their production may be compelled through a subpoena issued by a notary public to a person, having control of the general records of the transportation company owning the vehicle, for the taking of his deposition in such action. (Paragraph two of the syllabus in **In re Hyde, 149 Oh St, 407,** approved and followed.)"

Syllabus 2 of the Hyde case just reads:

"The names and addresses of the operators and the times of operation of public transportation vehicles of a company, as well as the times of their operation in reference to an accident involving one of such vehicles, which information, for general purposes, is a matter of record with the company, are not privileged and are relevant and competent as evidence in an action predicated on such accident claimed to have been caused by the negligence of the operator of such a vehicle. Such information may be elicited through a subpoena issued by a notary public, to one having control of the records of the transportation company, for the taking of his deposition in such action."

This holding reflects the statutory philosophy attending the legislative action to adequately pursue the most effective method of preparing for trial by pre-trial procedures looking toward a complete revelation of pertinent facts. When testing the merit of a statutory interrogation, the general purpose of the sections of the code controlling should be in contemplation of the Court in deciding a demurrer.

For facility of reference the sections of the code generally applying to pre-trial discovery of facts are quoted.

"**Sec. 11348 GC.** Annexing interrogatories to pleadings. A party may annex to his pleading, other than a demurrer, interrogatories, pertinent to the issue made in the pleadings, which interrogatories, if not demurred to, shall be plainly and fully answered under oath, by the party to whom they are propounded, or if such party is a corporation, by the president, secretary, or other officer thereof, as the party propounding requires."

"**Sec. 11521 GC.** How testimony taken. The testimony of witnesses may be taken:

"1. By affidavit;

"2. By deposition;

"3. By oral examination."

"**Sec. 11522 GC.** Same defined. An affidavit is a written declaration under oath, made without notice to the adverse party; a deposition is a written declaration under oath, made upon notice to the adverse party; and oral testimony is that delivered from the lips of the witness."

"**Sec. 11525 GC.** When deposition may be used. The deposition of a witness may be used only when it is made to appear to the satisfaction of the court that he does not reside in, or is absent from, the county where the action or proceeding is pending, or, by change of venue, is sent for trial; or that he is dead, or, from age, infirmity, or imprisonment, is unable

to attend court; or that the testimony is required upon a motion, or where the oral examination of the witness is not required."

"Sec. 11526 GC. What deposition taken. Either party may commence taking testimony by deposition at any time after service upon the defendant."

"Sec. 11550 GC. Party may be required to admit a paper to be genuine, or pay expenses of proof. At any time before the trial, either party may exhibit to the other, or to his attorney, any paper or document material to the action, and request an admission in writing of its genuineness. If the adverse party, or his attorney, fails to give such admission, within four days after the request, and the party exhibiting the paper or document be afterward put to expense to prove its genuineness, if that be finally proved or admitted on the trial, such expense, to be ascertained at the trial, shall be paid by the party refusing to make the admission, unless it appears to the satisfaction of the court, that there were good reasons for the refusal."

"Sec. 11551 GC. Books and writings. Upon motion, and reasonable notice thereof, the court, in which an action is pending, may order the parties to produce books and writings in their possession or power which contain evidence pertinent to the issue, in cases and under circumstances where they might heretofore have been compelled to produce them by the ordinary rules of chancery. If the plaintiff fails to comply with such order on motion, the court may give judgment for the defendant as in case of non-suit; if a defendant fails to comply with such order, on motion, the court may give judgment against him by default."

"Sec. 11552 GC. Inspection and copy of books and documents. Either party, or his attorney, in writing, may demand of the adverse party an inspection and copy, or permission to take a copy, of a book, paper, or document in his possession, or under his control, containing evidence relating to the merits of the action or defense, specifying the book, paper, or document with sufficient particularity to enable the other party to distinguish it. If compliance with the demand within four days be refused, on motion and notice to the adverse party, the court or judge may order the adverse party to give the other, within the time specified, an inspection and copy, or permission to take a copy, of such book, paper, or document. On failure to comply with such order, the court may exclude the paper or document if offered in evidence, or, if wanted as evidence by the party applying, may direct the jury to presume it to be such as such party, by affidavit, al-

leges it to be. This section shall not prevent a party from compelling another to produce any book, paper, or document when he is examined as a witness."

"Sec. 11553 GC. Court may appoint master to inspect books, papers, etc. If the party in possession of any such book, paper, writing, or document, alleges that it, or a part thereof is of mere private interest, or of such character that it ought not to be produced, or an inspection or copy allowed or taken, on motion of either party, the court may direct a private examination of it by a master. If he finds that such book, paper, writing, or document contains matter pertinent to the case, and proper to be produced, inspected, or copied, he shall report it to the court, or a copy of such part as he finds pertinent to the case, and proper to be produced, inspected, or copied. The book, paper, writing, or document, or part thereof, so reported, shall be admitted in evidence on the trial, unless for proper cause the court excludes it."

"Sec. 11554. How copies of written instrument obtained. Either party, or his attorney, if required, shall deliver to the other party, or his attorney, a copy of any instrument of writing whereon the action or defense is founded, or which he intends to offer in evidence at the trial. If the plaintiff or defendant refuses to furnish the copy required, the party so refusing shall not be permitted to give the original in evidence at the trial. This section does not apply to a paper, a copy of which, as required by law, is filed with a pleading."

"Sec. 11555 GC. Action for discovery. When a person claiming to have a cause of action, or a defense to an action commenced against him, without a discovery of the fact from the adverse party, is unable to file his petition or answer, he may bring an action for discovery, setting forth in his petition the necessity therefor, and the grounds thereof, with such interrogatories relating to the subject matter of the discovery as are necessary to procure the discovery sought, which, if not demurred to, must be fully and directly answered under oath by the defendant. Upon the final disposition of the action, the costs thereof shall be taxed in such manner as the court deems equitable."

To further amplify modern judicial approach, a case originating in South Carolina finally reached the Supreme Court of the United States, Hickman v. Taylor, 329 U. S. 495, and should be quoted in part.

Page 513

"We fully appreciate the wide-spread controversy among the members of the legal profession over the problem raised by this case. It is a problem that rests on what has been

one of the most hazy frontiers of the discovery process. * ' *"
Page 500

"Under the prior federal practice, the pretrial functions of notice-giving, issue-formulation and fact-revelation were performed primarily and inadequately by the pleadings. Inquiry into the issues and the facts before trial was narrowly confined and was often cumbersome in method. The new rules, however, restrict the pleadings to the task of general notice-giving and invest the deposition-discovery process with a vital role in the preparation for trial. The various instruments of discovery now serve (1) as a device, along with the pre-trial hearing under Rule 16, to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial. * * *"

Page 506

"Thus in a suit by an injured employee against a railroad or in a suit by an insured person against an insurance company the corporate defendant could pull a dark veil of secrecy over all the pertinent facts it can collect after the claim arises merely on the assertion that such facts were gathered by its large staff of attorneys and claim agents. At the same time, the individual plaintiff, who often has direct knowledge of the matter in issue and has no counsel until some time after his claim arises could be compelled to disclose all the intimate details of his case. By endowing with immunity from disclosure all that a lawyer discovers in the course of his duties, it is said, the rights of individual litigants in such cases are drained of vitality and the lawsuit becomes more of a battle of deception than a search for truth.

"But framing the problem in terms of assisting individual plaintiffs in their suits against corporate defendants is unsatisfactory. Discovery concededly may work to the disadvantage as well as to the advantage of individual plaintiffs. Discovery, in other words, is not a one-way proposition. It is available in all types of cases at the behest of any party, individual or corporate, plaintiff or defendant. The problem thus far transcends the situation confronting this petitioner. And we must view that problem in light of the limitless situations where the particular kind of discovery sought by petitioner might be used.

"We agree, of course, that the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of "fishing expedition" serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

It was pointed out to the Court that this case is a Federal one decided under the Federal Rules of Civil Procedure and therefore inapplicable as a precedent in this case. This observation would be well taken if the rules which the Court was considering were in substance contrary in content to the statutory rules in Ohio. It is therefore proper that we consider the **Federal Rules of Civil Procedure,** as amended, which in their relevant portions are as follows:

### RULE 26

"(a) When Depositions May Be Taken. Any party may take the testimony of any person, including a party, by deposition upon oral examination or written interrogatories for the purpose of discovery or for use as evidence in the action or for both purposes. After commencement of the action the deposition may be taken without leave of court, except that leave, granted with or without notice, must be obtained if notice of the taking is served by the plaintiff within 20 days after commencement of the action. The attendance of witnesses may be compelled by the use of subpoena as provided in Rule 45. Depositions shall be taken only in accordance with these rules. The deposition of a person confined in prison may be taken only by leave of court on such terms as the court prescribes.

"(b) Scope of Examination. Unless otherwise ordered by the court as provided by Rule 30 (b) or (d), the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."

## RULE 33

"Any party may serve upon any adverse party written interrogatories to be answered by the party served or, if the party served is a public or private corporation or a partnership or association, by any officer or agent, who shall furnish such information as is available to the party. Interrogatories may be served after commencement of the action and without leave of court, except that, if service is made by the plaintiff within 10 days after such commencement, leave of court granted with or without notice must first be obtained. The interrogatories shall be answered separately and fully in writing under oath. The answers shall be signed by the person making them; and the party upon whom the interrogatories have been served shall serve a copy of the answers on the party submitting the interrogatories within 15 days after service of the interrogatories, unless the court, on motion and notice and for good cause shown, enlarges or shortens the time. Within 10 days after service of interrogatories a party may serve written objections thereto together with a notice of hearing the objections at the earliest practicable time. Answers to interrogatories to which objection is made shall be deferred until the objections are determined.

"Interrogatories may relate to any matters which can be inquired into under Rule 26 (b), and the answers may be used to the same extent as provided in Rule 26 (d) for the use of the deposition of a party. Interrogatories may be served after a deposition has been taken, and a deposition may be sought after interrogatories have been answered, but the court, on motion of the deponent or the party interrogated, may make such protective order as justice may require. The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, expense, embarrassment, or oppression. The provisions of Rule 30 (b) are applicable for the protection of the party from whom answers to interrogatories are sought under this rule."

## RULE 34

"Upon motion of any party showing good cause therefor and upon notice to all other parties, and subject to the provisions of Rule 30 (b), the court in which an action is pending may (1) order any party to produce and permit the inspection and copying or photographing, by or on behalf of the moving party, of any designated documents, papers, books, accounts, letters, photographs, objects, or tangible things, not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination per-

mitted by Rule 26 (b) and which are in his possession, custody, or control; or (2) order any party to permit entry upon designated land or other property in his possession or control for the purpose of inspecting, measuring, surveying, or photographing the property or any designated object or operation thereon within the scope of the examination permitted by Rule 26 (b). The order shall specify the time, place, and manner of making the inspection and taking the copies and photographs and may prescribe such terms and conditions as are just."

These rules were under consideration in Hickman v. Taylor, supra. The ratio decidendi of both the Ohio and Federal cases arise out of legislation on the same subject matter and the analogy of the state statutes and the Federal Rules of Civil Procedure. In substance they can be said to be legally in pari materia. This hardly can be challenged. Hence there is every good reason to embrace the principles enunciated in those two cases as the measure of pertinency, relevancy and materiality of the interrogatories under consideration in the case at bar.

Although the state statutes, insofar as exempting privileged matter from being disclosed by the interrogatory procedure, are silent on that subject and the Federal Rules make a specific exemption thereof, yet the Courts of Ohio have uniformly protected privileged matter from pre-trial discovery procedures.

Touching upon the nature of the privilege as pertaining to evidentiary matter in the hands of counsel, the Court in the Hickman case made this apt observation.

Page 510

"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case

as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

"We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning."

In ruling upon the demurrer in the case at bar, this Court subscribes to the prevailing precedent in Ohio, which is deemed to be in consonance with the last quoted exerpts from the Hickman case.

Sec. 11348 GC, providing for interrogatories, was intended to obviate other more cumbersome procedures and to permit either side in a lawsuit to become fully acquainted with the facts pertinent to the issues in the possession of the other prior to the trial of the case, and thus prevent the trial of a lawsuit from being a game or a mere contest of wits and ingenuity and to attempt instead to make it a true instrument of justice.

Coming now to a consideration of the individual interrogatories and applying to each the law as stated herein, the Court will take up each one in numerical order.

Interrogatories numbered 1, 2, 3, 4, 5 and 6 are deemed to be pertinent within the purview of the law and the demurrer as to these is overruled.

Interrogatory No. 7 is considered to be somewhat remote from the issues and would not ordinarily be admissible in evidence. The demurrer as to it is sustained.

'The demurrer to Interrogatories Nos. 8 and 9 is overruled. However, the information disclosed in the answers to these interrogatories will be permitted in evidence only under the limitations stated in **17 O. Jur., paragraph 183, page 239:**

"Evidence of prior similar accidents is admissible for two purposes, and two purposes only. In all cases in which evidence of other accidents occurring at the same place, in the operation of the same or a similar machine, or by the use of the same or similar appliances, is admitted, it is admitted (1) for the purpose of showing the dangerous character or condition thereof—whether or not a dangerous condition existed, and (2) to show notice to the defendant of such character or condition—to bring home to him notice of the danger or defect which is claimed to have caused the accident." and specifically as restricted therein and amplified by the ruling in **Cottman v. Federman Co., 71 Oh Ap 89** and Dietz v. Cincinnati, 25 O. C. C. N. S. 506, Hamilton County Court of Appeals.

Specifically as to Interrogatory No. 9, the information contained therein may enable the plaintiffs to discover from such persons the character of the accidents in which they were involved, so as to possibly prove the similarity of those accidents to the accident in the case at bar. It is quite true that the names and addresses of the parties involved would not of themselves be admissible in evidence, yet such information could lead to the discovery of admissible evidence; and since interrogatories are used as a substitute for the old discovery proceedings under the authorities above stated, it is proper to seek such information through interrogatories. The demurrer as to it is overruled.

Interrogatory No. 10, in the opinion of the Court, makes a most cogent inquiry. It would seem that the presence of an automatic warning device is of an especial incidence to possible liability in this case, and therefore the demurrer to it is overruled.

Interrogatory No. 11, while projecting a rather miscroscopic inquiry, is deemed to be pertinent to the issues and the demurrer therefore is overruled.

Interrogatory No. 12, when answered, would serve the purpose of determining the mechanical condition of the warning device at the time of the accident. This query is deemed to be within the purview of the law and therefore the demurrer is overruled.

Interrogatories Nos. 13, 14 and 15 request the disclosure of the contents of reports made by the defendant touching upon the very facts in issue and that is as to the possible presence

of negligence on the part of the defendant. The Court, in the instance of the latter three interrogatories, cannot conceive that the information inquired of here is violative of the law appertaining to privileged matters. Hence, the interrogatories as to these are overruled.

An entry is authorized in accordance with these findings.